UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 20-80743 |
| | ) | |
| James J. Imburgia, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Lynch |
| | ) | |

MEMORANDUM OPINION

The Debtor moves pursuant to 11 U.S.C. § 522(f)(1) to avoid the judgment lien of creditor Warner Contracting, LLC ("Warner") on the Debtor's interest in his residence in Loves Park, Illinois. (ECF No. 25, the "Motion.") Debtor asserts a homestead exemption of $15,000 under 735 ILCS 5/12-901, as permitted by section 522(b)(3)(A) of the Bankruptcy Code, to argue that Warner's lien impairs his exemption. Warner objects to the Motion and denies its judgment lien impairs the exemption. The Court conducted an evidentiary hearing on the Motion. As discussed below, after careful consideration of the weight and credibility of the testimony of the witnesses and the other evidence presented, the Court finds that the Debtor failed to meet his burden of demonstrating that the judgment lien impairs the homestead exemption.

## I.  PROCEDURAL HISTORY AND FACTUAL FINDINGS[1]

James Imburgia filed his chapter 7 bankruptcy petition on April 13, 2020. The Debtor's bankruptcy schedules list the real property located at 2109 Margaret Drive, Loves Park, Illinois (the "Residence") as his residence, and value of his interest in the property to be $60,000. The Residence is encumbered by a mortgage loan from U.S. Bank Home Mortgage of $48,837.00. It is not disputed that Debtor holds a 100% ownership in the Residence. Nor is his assertion that he holds a homestead exemption of $15,000 under 735 ILCS 5/12-901, as permitted by section 522(b)(3)(A) of the Bankruptcy Code. Four months after commencing this case, Mr. Imburgia received his chapter 7 discharge, and the case was closed on August 17, 2020. On Debtor's

---

[1] The following findings, together with those set out in the "Discussion" below, set forth the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

motion, the Court reopened the case on July 30, 2025, to permit the Debtor to bring this motion to avoid a judgment lien on the Residence. (ECF No. 31.)

Before the petition date, Warner obtained a judgment against the Debtor from the Circuit Court of the 17th Judicial Circuit (Winnebago County, Illinois) for non-payment of certain repair work it performed on the Residence. Following a bench trial, the state court awarded Warner judgment for breach of a written contract in the amount of $29,070.45, plus costs of $363.25. Warner caused the memorandum of judgment to be recorded with the Winnebago County Recorder on March 27, 2020. (Cr. Ex. A.) It is not disputed that the liens of U.S. Bank for the secured first mortgage and Warner were the only liens recorded on the Residence as of the petition date.

Section 522(f)(1) of the Bankruptcy Code allows a debtor to avoid the fixing of a judicial lien "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section." 11 U.S.C. § 522(f)(1). The Debtor now seeks to avoid Warner's lien pursuant to section 522(f). He contends that Warner's lien impairs his homestead exemption.

Warner opposes the Motion. The judgment creditor does not dispute the U.S. Bank mortgage lien or the Debtor's eligibility to claim the homestead exemption, arguing instead the value of the Residence on the petition date to be about $135,000 and, consequently, that its lien does not impair the exemption. As such, the parties' dispute centers on the value of the Residence. If the value is shown to be great enough that the Debtor has equity to cover both the lien and the homestead exemption, then the lien cannot be said to "impair" that exemption. If not, the judgment lien shall be avoided.

The Court held an evidentiary hearing at which the Debtor, the owner of Warner, and two realtors called by Warner, all testified. Although neither realtor is a licensed appraiser, they were accepted as experts without objection and their reports were admitted into evidence on the stipulation of the parties. The Debtor and Warner also stipulated to the admission of several pictures of the Residence, a copy of Warner's memorandum of judgment and the 2019 Winnebago County tax assessment for the Residence.

The Debtor concedes that if the value of the Residence exceeded $92,837.37 as of the petition date, then Warner's lien does not impair his homestead exemption. (ECF No. 44 at 3.) After carefully weighing the testimony and evidence presented, the Court finds that the Debtor failed to meet his burden of demonstrating that the lien impairs his exemption. Accordingly, the Motion must be denied.

## II.  JURISDICTION

The district court has "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). In accordance with 28 U.S.C. § 157(a), the district court has referred this and all other cases under title 11 to this Court. N.D. Ill. R. 40.3.1(a). A motion to avoid a judicial lien originates under the Bankruptcy Code, only arises in a bankruptcy case and is expressly a core proceeding. 28 U.S.C. § 157(b)(1), (b)(2)(A) & (K); *In re Propst*, 637 B.R. 489, 493 (Bankr. N.D. Ill. 2022). The Motion is within the constitutional authority of the bankruptcy courts to enter final orders. *Propst*, 637 B.R. at 493 (citing *Stern v. Marshall*, 564 U.S. 462, 475 (2011)). The parties also indicated their consent to the authority of this Court to enter final orders and judgments in this proceeding.

## III.  DISCUSSION

In Illinois, "a lien on real estate is created when a 'transcript, certified copy or memorandum of the judgment' is filed in the office of the county recorder where the real estate is located." *In re Marriage of King*, 208 Ill. 2d 332, 346-47 (2003) (quoting 735 ILCS 5/12-101). While the discharge acts as an injunction forbidding collection on most pre-petition debts "as a personal liability of the debtor," 11 U.S.C. § 524(a), the discharge generally does not prevent enforcement of a lien against collateral owned by the debtor and subject to that lien. "Security interests and other liens often pass through bankruptcy unaffected," unless modified or avoided pursuant to the Bankruptcy Code. *In re Kleynerman*, 93 F. 4th 1071, 1073 (7th Cir. 2024) (citing *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)).

Three elements must be shown to avoid a lien under section 522(f): "(1) a lien must have fixed on an interest of the debtor in property, (2) the lien must impair an exemption to which the debtor would have been entitled under § 522(b), and (3) the lien must be a judicial lien—with the debtor bearing the burden of each element." *In re Jaffe*, 932 F.3d 602, 605 (7th Cir. 2019). The parties do not dispute that the Debtor owns the Residence, Warner's judgment lien fixed on his interest pre-petition, the lien is a judicial lien,[2] and the Debtor is entitled to assert a homestead exemption in the property. The only dispute is whether Warner's lien "impairs" that exemption.

The Bankruptcy Code clarifies that:

---

[2] A "judicial lien" is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." *City of Chi. v. Mance (In re Mance)*, 31 F.4th 1014, 1018 (7th Cir. 2022) (quoting 11 U.S.C. § 101(36)).

a lien shall be considered to impair an exemption to the extent that the sum of –

(i) the lien;
(ii) all other liens on the property; and
(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A). Here, like in *Willett v. Appeal of Nat'l Capital Mgmt., LLC (In re Willett)*, "to avoid impairing the exemption, the [value of the Debtor's ownership interest in the property] had to exceed the amount of the exemption (in this case, $15,000) plus all liens on the property." 544 F.3d 787, 790 (7th Cir. 2008). The Debtor bears the burden of proving each element of section 522(f)(1) except the creditor bears the burden of challenging the validity of the asserted exemption as not properly claimed. *In re Bowens*, 656 B.R. 883, 889 (Bankr. N.D. Ill. 2024) (citing Fed. R. Bankr. P. 4003(c) ("In a hearing under this Rule 4003, the objecting party has the burden of proving that an exemption was not properly claimed.")). *See also, e.g., In re Schoonover*, 331 F.3d 575, 578 (7th Cir. 2003) (as opposed to Rule 4003(b)'s provisions for objection to claim of exemption, Rule 4003(d) generally places "the onus of contesting a lien on debtors").

In the context of section 522(f), "'value' means fair market value as of the date of the filing of the petition or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate." *Willett*, 544 F.3d at 791 (quoting 11 U.S.C. 522(a)(2)). As it is uncontested that the Residence was owned by the Debtor as of the petition date, "the filing date is the time for valuation of an asset claimed as exempt." *Kleynerman*, 93 F.4th at 1074. In addressing the Bankruptcy Code's fraudulent transfer provisions in section 548, which use the "entirely novel phrase 'reasonably equivalent value,'" the Supreme Court has distinguished the "well-established concept" of "fair market value," used in section 522. *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 537 (1994). The "market value" of a piece of property is

the price which it might be expected to bring if offered for sale in a fair market; not the price which might be obtained on a sale at public auction or a sale forced by the necessities of the owner, but such a price as would be fixed by negotiation and mutual agreement, after ample time to find a purchaser, as between a vendor who is willing (but not compelled) to

sell and a purchaser who desires to buy but is not compelled to take the particular . . . piece of property.

*Id.* at 538 (quoting Black's Law Dictionary 971 (6th ed. 1990)). Courts have further discerned that the statutory formula used in section 522(f)(2)(A) "does not include liquidation costs." *In re Zavalza*, No. 21-13296, 2024 Bankr. LEXIS 895, at *6 (Bankr. N.D. Ill. Apr. 11, 2024) (agreeing with "majority view" that "[e]stimated liquidation costs such as broker commissions, title costs and recording costs should not be deducted from the fair market value of the property when calculating the extent of the impairment" (citing *Sheth v. Affiliated Realty & Mgmt. Co. (In re Sheth)*, 225 B.R. 913, 919 (Bankr. N.D. Ill. 1998))).

Noting that trial courts "enjoy considerable discretion in evaluating the qualifications of an expert and the reliability of the proffered testimony," the Seventh Circuit did not disagree that "three valuation methods are generally used to determine the fair market value of real property . . . (1) the comparable sales method, (2) the income method, and (3) the cost method" or some combination of the three. *Lock Realty Corp. IX v. U.S. Health, LP*, 707 F.3d 764, 771 (7th Cir. 2013) (discussion in the context of a commercial lease). The comparable sales method is frequently used in evaluating the value of residential property. *See, e.g., In re Badolato,* 641 B.R. 806, 812 (Bankr. E.D. Pa. 2022) ("Mr. Ryan applied the 'comparable sales methodology,' an approach commonly utilized by expert appraisers and 'generally accepted [as] the best evidence of market value in cases where a court must determine the value of real property.'" (alteration in original) (quoting *Hawkins v. Santander Bank (In re Hawkins)*, 606 B.R. 632, 643 (Bankr. E.D. Pa. 2019))); *Gallick v. Franklin Cty. Bd. of Revision,* No. 14 CV 007191, 2014 Ohio Misc. LEXIS 17575, at *29 (Ct. Com. Pl. Oct. 29, 2014) ("The comparable sales approach is considered especially useful for valuing residential properties."); *In re De Leon*, No. 11-56921-ASW, 2013 Bankr. LEXIS 3004, at *41 (Bankr. N.D. Cal. July 18, 2013) (preferring sales comparison approach to income or cost method because care facilities were "[f]or all practical purposes . . . single family homes"); *In re Culver*, No. 23-35334 (CGM), 2025 Bankr. LEXIS 2690, at *14 (Bankr. S.D.N.Y. Oct. 17, 2025) ("In valuing residential real property under New York law, the typical method used is the comparable sales method."). Neither party provided evidence as to the income method or cost method, and no evidence was presented suggesting that the best use of the property was as an income-producing property or to scrap and build.

The Residence is a ranch-style house with 1,153 square feet, 3 bedrooms, 1 bathroom, a 2.5 car garage and no basement. Mr. Imburgia, the only witness called by the Debtor, listed the Residence as worth $60,000, which at trial he conceded to be

the same amount he paid for it six years before. Mr. Imburgia stated that the Residence was "a fixer upper when I bought it." He testified that a kitchen wall had a crack due to the installation of the porch by the prior owner, vaguely adding that "the kitchen has a lot of problems that need to be taken care of." But he did not describe with any detail what those "problems" were or provide information about the impact, if any, they had on his estimate. He also testified that the previous owner had redone the bathroom, allegedly installing new drywall over mold. Mr. Imburgia asserted that the mold has reappeared (it is not clear when) and he is now using bleach as a cheap "fix" for the problem. He also testified with little elaboration that a portion of the house had "old carpeting." Again, he did not opine about the extent of these conditions or even their presence as of the petition date, or estimate how they might affect the value of the Residence in 2020.

Mr. Imburgia vaguely testified, without objection, that in 2020 he had looked at the Zillow real estate website. He did not describe what information he obtained from this source or suggest how Zillow is relevant to his testimony. His attorney did not attempt to lay a foundation or argue for the admissibility of the Zillow estimate. As a general proposition, a homeowner, who is knowledgeable about the condition of his home, is generally competent to testify regarding its value. *In re Liss*, 641 B.R. 384, 388 (Bankr. N.D. Ill. 2022) (accepting debtor's lay opinion not based solely on speculative factors where creditor failed to call any witnesses to support a competing valuation). However, such opinions as to the ultimate monetary value of the home are often "entitled to little weight due to their lack of knowledge of the general sales atmosphere and of comparable sales, and their lack of training and expertise in making adjustments between other properties and their own." *Hegeduis v. Harris, N.A. (In re Hegeduis)*, 525 B.R. 74, 81 (Bankr. N.D. Ind. 2015).

The Debtor was permitted to testify, over Warner's objection, about Winnebago County Treasurer Parcel Tax Details statements for the Residence regarding Tax Year 2019 (payable 2020). (D. Ex. A.)[3] The printout, with its recitation of the tax calculation, includes the line: "Fair Market Value: 45330." Without addressing the admissibility of this statement as to the fair market value of the property, it is enough to note that the amount stated in a tax assessment with nothing more is of very little weight as to the issue of the property's fair market value for purposes of this motion.

---

[3] During cross-examination, the Debtor's counsel also moved into evidence county property tax details for 2019 taxes payable in 2020 for the three properties used in the market analysis prepared by Warner's expert: the Applewood Ln., Loves Park property (Ex. C), the Zinnia Dr., Machesney Park property (Ex. E) and the Harvest Tr., Loves Park property (Ex. G). These exhibits also reference Tax Year 2019. The Debtor did not present testimony how the figures for "Fair Market Value," found at the end of a section titled "Tax Calculation," were compiled or what they represent.

*See, e.g., Vill. of Round Lake v. Amann*, 311 Ill. App. 3d 705, 715 (2000) ("It is well established that the determination of assessed valuation is for a different purpose and is not a fair criterion of fair market value.") (citing *City of Chicago v. Harrison-Halsted Building Corp.*, 11 Ill. 2d 431, 439 (1957)); *Ceres Terminals v. Chi. City Bank & Tr. Co.*, 259 Ill. App. 3d 836, 856 (1994) (noting "desire for uniformity in order to equalize the tax burden" is independent of market value and citing numerous cases "unequivocal in their determinations that valuation for tax assessment purposes is not coextensive with the valuation for determining the actual fair market value of the property").

As noted above, Warner presented three witnesses and offered ten exhibits at trial.[4] Scott Warner, the owner and operator of the lienholder, testified about the construction work his company performed on the Debtor's house between July 2017 and January 2018.

Its second witness, Julie Humpal, has been a real estate broker since 1994 and holds a managing broker's license. She is located in the Rockford area, conducting her business in this part of the state and adjoining areas of Wisconsin. Warner hired her in July 2025 to prepare a valuation report for 2019-2020. The Debtor did not object to her presenting expert valuation testimony about the Residence. Ms. Humpal testified she is familiar with the Residence and has reviewed extensive photographs of the premises. She is familiar with the area which she describes as "well-established." However, while she typically does a "walk-through" for her personal clients, she did not tour the Residence.

At trial, Ms. Humpal identified her valuation report (admitted without objection as Cr. Ex. I) and proceeded to testify about her comparable market analysis. She told the Court that the Residence is comparable to three 3-bedroom ranch-style houses in the area ("in the same geographical grid" as the Residence) which sold within a year before the petition date. The first, sold in February 2020 for $119,900, was a slightly smaller residence with 1,023 square feet, 1.5 baths, a 2-car garage and a basement. The second sold in July 2019 for $146,000. It had 1,153 square feet with 1.5 baths, a 2-car garage and a basement. The third was sold in May 2019 for $134,900, with 1,120 square feet, 1.5 baths, a 2-car garage and a basement. From these comparables, Ms. Humpal valued the Debtor's Residence at $135,000 as of the petition date. Although the three comparables had basements, no evidence was

---

[4] Seven of these exhibits, Cr. Ex. B – H, consisted of photos of the Residence taken at various times. All but Cr. Ex. D were stipulated to and admitted without objection. The Debtor's objection to Cr. Ex. D was sustained. Its remaining exhibits, another copy of the recorded state court judgment (Cr. Ex. A), the market analyses of Ms. Humpal (Cr. Ex. I), and Mr. Shields' valuation report and 17 pages of accompanying materials (Cr. Ex. J), were admitted without objection.

presented by any of the experts from which the Court could determine if any adjustments were appropriate for a basement or powder room, or even whether any adjustments were appropriate here. During her testimony, however, Ms. Humpal stated that in her view the lack of basement may reduce potential problems for the Residence and is not an issue for her calculation of its value. This assertion was not examined during her cross-examination. Nor was she questioned about her opinion that the large garage and storage space behind Residence are unique positive features. She further testified that the Residence is in a well-established location with nearby stores, noting that she drove through the area as recently as a few days before trial and observed only one vacant lot.

She also testified that she never relies on Zillow. In her view, that website tends to be inaccurate, is subject to seller influence and "is not accepted in realty." Finally, Ms. Humpal offered her opinion that tax assessments are not accurate measures of property value. She explained that assessors never "match true price" and do not "keep up" with property changes. She further opined that Warner's prepetition repair work would have "had a big impact" on the value of the Residence.

In August 2025, the Debtor asked Brad Shields, a licensed real estate broker from the Rockford area, to prepare a valuation report on the Residence. (Cr. Ex. J.) At trial, Mr. Shields told the Court that his relevant experience includes providing "input into listing prices . . . so my clients can list a good price." Called to testify by Warner, and offered as an expert without objection, Mr. Shields further explained that Mr. Imburgia had asked him to prepare a report about what the Residence could have been marketed for in 2020. He identified Exhibit J to be his report.

Mr. Shields testified that he arrived at values ranging from $82,500 to $91,620 for his valuation of the Residence. First, he stated that based on his analysis of homes sold in the area between 2014 and 2020, he estimated that as a general matter property values in the area appreciated between 41% to 52% between 2014 and 2020. Applying this average appreciation rate to the Debtor's initial $60,000 purchase price, Mr. Shields estimated the value of the Property as of the petition date to be around $85,020 to $91,620. Acknowledging that he does not "usually look back five years," he then testified that he used 8-12 comparable local sales to arrive at a comparable sales estimate for 2020, opining that "a sales price of $90,349.08 [is] realistic," but that it was his "professional opinion that the house would sell between $82,500-$87,500 in 2020." However, he did not specify or provide details about his alleged comparable sales either in his report or during his direct or, significantly, cross-examination by the Debtor's counsel. "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Cripe v. Henkel Corp.*, 858 F.3d 1110, 1113

(7th Cir. 2017) (quoting *Mid-State Fertilizer Co. v. Exchange National Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989)). *See also* Fed. R. Civ. P. 26(a)(2)(B)(ii) (expert report must include "the facts or data considered by" the expert witness in forming his opinions). Without details on the comparative sales or the adjustments Mr. Shields applied in reaching his opinion, the Court cannot judge the strengths or weaknesses of the comparisons or the reasonableness of the adjustments. Additionally, while Mr. Shields seems to ask the Court to trust his broad conclusion that the "sales were similar," he admitted during cross-examination that he had never been inside the Residence.

Mr. Shields attached to his report – without explanation – what appears to be a printout purporting to list some 182 addresses involved in real estate transactions between 2014 to May 2020. Only five of these addresses appear to reference properties in the same zip code as the Residence (there is no indication of distance from the Residence, whether they share its "grid location" or even disclose the municipality in which the addresses are found). Only one of the five addresses indicates a closing date within one year of the petition date; two disclose 2016 closing dates. Mr. Shields did not testify about the meaning, significance or relevance of this attachment. In addition, Exhibit J also includes what purports to be a listing sheet for the Residence from around 2013-2014, Winnebago County Treasurer Parcel Tax Details (documents similar to D. Ex. A) for 2019, 2020, 2021 and 2024, and a Harlem Township Assessor description of the property.

Mr. Shields testified that he does not believe that a "tax assessment is an accurate estimate of value." He criticized tax assessments as not accurate indicators of value, observing that, in his view, tax assessors do not visit the properties, have little information about the properties in most cases and use global numbers with a "thin connection" with the reality for their determinations.

The Court finds Ms. Humpal's methodology of comparing to actual sales in 2020 to be more credible for estimating value as of the petition date. Mr. Shields did not show his averages and methodology to be accurate, reliable or appropriate, and failed to demonstrate the general acceptance of his peculiar average appreciation approach. For example, his appreciation method presumes that the Debtor's purchase price was an accurate value, that it appreciated at precisely an average amount, and that there were no changes to the property affecting that appreciation rate. Inconsistent with those assumptions, the record reveals that substantial work was performed on the house during the relevant period on its roof, windows, siding, soffits and facia. While the Debtor challenges whether he authorized all the work performed by Warner – contending that he only authorized the roof repairs – he does not dispute

that the repairs were made after he purchased the house and before he filed his bankruptcy petition, work that is evidenced by the photographs received into evidence without objection. He did not explain or suggest that his analysis takes into consideration the "fixer upper" nature of the home when the Debtor purchased it in 2014, the extensive repairs made before the petition date or other relevant details. Nor has he furnished any details about his downward adjustment to his own price comparison estimates. Providing no detail on the facts or data he claimed to consider or the downward adjustments he made to his own estimates, his testimony wholly lacks the detail and specificity of Ms. Humpal's valuation testimony. Mr. Shields testimony adds little to "the bottom line."

Warner has identified and analyzed three similar properties in the area that sold for between $119,000 and $145,000 within a year of the petition. The Court finds its proof to be credible and convincing. In contrast, the relevant proof presented by the Debtor at trial was vague and speculative and failed to credibly demonstrate that the value of the Residence was not greater than $ 92,837.37 as of the petition date.

## V.  CONCLUSION

The Court finds Humpal's expert appraisal to be more reliable and credible than the evidence presented by the Debtor as to the value of the Residence. Because the Debtor has not shown by a preponderance of the evidence that the fair market value did not exceed $92,837.37 when he commenced this bankruptcy case, he has not met his burden of demonstrating that Warner's judicial lien impairs the homestead exemption to which he would be entitled. Accordingly, the Motion will be denied.

The Court will enter an order giving effect to this decision contemporaneously herewith.

DATE: March 31, 2026

ENTER:

Thomas M. Lynch
United States Bankruptcy Judge